

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

DEC 08 2023

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ANTHONY A. KING, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | Civil Action **1:23-CV-5643** |
| vs. | § | |
| | § | |
| UNITED WAY | § | **JURY DEMANDED** |
| OF GREATER ATLANTA | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

TO THE HONORABLE COURT:

Plaintiff Anthony King presents his Complaint for unlawful discrimination and retaliation in violation of 42 U.S.C. § 1981.

### PARTIES

1. Anthony King is a citizen and resident of the United States, residing in Fulton County, Georgia.

2. United Way of Greater Atlanta may be served with process by serving President & CEO, Milton J. Little Jr. at the registered address, 40 Courtland Street NE, Suite # 300, Atlanta, Georgia 30303.

## JURISDICTION AND VENUE

3.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331. This is a race discrimination and retaliation suit authorized and instituted pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

## BACKGROUND FACTS

4.  United Way of Greater Atlanta discriminated and retaliated against King by terminating his employment after requesting a human resources investigation into unequal treatment of Black employees within the United Way of Greater Atlanta in October of 2019.  King was terminated on December 10th, 2019. *See* 42 U.S.C. § 1981.

5.  United Way of Greater Atlanta has a mission statement to "Engage and bring together people and resources to drive sustainable and equitable improvements in the well-being of children, families, and individuals in the community."

6.  United Way of Greater Atlanta distributes money to partner organizations, such as Action Ministries, Inc., Atlanta Community Food Bank, and Meals on Wheels.

7.  In July of 2019, after witnessing what King perceived as blatant acts of discrimination against two Black female colleagues in the spring and summer of 2019, King spoke to Sara Cloud in human resources regarding the terminations and the unequal treatment of Black employees.

8.  During this conversation with Cloud, King discussed the circumstances surrounding the termination of his colleague, Corporate Relations Manager, Renaye Waller. Waller was a 17-year veteran of United Way. Waller was terminated due to a decline in "performance" in the previous 2018 fundraising year, but human resources never looked into the details of why Waller's performance dropped from previous years.

9.  King told Sara Cloud in human resources that Waller was given an unusually heavy workload and had less support from support staff than Waller's two White teammates in the Fall of 2018. The two White employees did not make themselves fully available to do their work during the peak fundraising period, so Waller had to not only carry a heavier workload, but Waller also received less support from other support staff members in carrying out that workload. The result was a predictable decline in performance. Waller was terminated after 17 years of service with United Way in July of 2019 based upon an alleged decline in performance.

10. King let Cloud know that he felt that the terminations of Waller and another Black female, Valencya Thompson, who was terminated shortly after announcing her pregnancy, were highly questionable and likely based upon their race. Cloud reiterated that Waller's termination was based upon a decline in performance, but never investigated what led a top fundraiser to have such a drastic decline.

11. In August of 2019, while attending a week-long United Way Worldwide

Summit on Diversity and Equity in New Orleans, King and the other attendees, were told by United Way Worldwide leadership to "be bold" when witnessing racial inequality in the United Way workplace. The topics of the United Way summit focused on recognizing the internal and external issues United Way has with diversity, inequality, and equity. They acknowledged the challenges local United Way offices around the country face related to issues with diversity, equity and equality.

12. Several attendees of this summit raised concerns that if employees are to "be bold" and speak up when witnessing inequality or discrimination in the workplace, those employees will likely be targets of certain members of leadership, who are often the source of the inequality and discrimination. United Way Worldwide leadership acknowledged that possibility and said that they were putting materials and training tools in place in order to help resolve any issues that may arise at any local United Way.

13. Upon returning from the United Way Worldwide Summit, King recognized some disparities in the workloads and support given to Black employees versus White employees in the department. This was in addition to the concerns he raised with HR in July. So, in October of 2019, King had a regularly scheduled quarterly performance review with supervisor, Lauren Brooks. During this quarterly review, King made the decision to follow the United Way Worldwide recommendation to "be bold," and King expressed concerns of unequal treatment of Black employees within the department, and raised concerns about a pattern

and practice of discriminatory behavior. King cited several examples of this unequal treatment and wanted the issue to be formally addressed. Brooks scheduled a meeting with human resources scheduled for the following day.

14. The following day, King, Brooks, and Erin Echols, HR Lead, had a meeting to discuss King's concerns. King reiterated the concerns he expressed to Brooks the day before and continued to cite examples of unequal treatment of Black employees. When asked if he wanted an investigation, King said "yes," but expressed reservations as to whether other Black employees in the department would want to speak candidly. King said he would ask other Black employees if they would be willing to speak to HR and share their concerns and experiences. Echols scheduled a follow-up meeting between HR, King, and Brooks for the following week.

15. After this meeting, King spoke to several Black employees within the department to let them know that he had requested an investigation into unequal treatment of Black employees, and King asked several co-workers if they would be willing to speak candidly to HR. Every Black employee King spoke to said that they would be willing to speak to HR if approached during an investigation.

16. The following week, the second scheduled meeting took place between Echols, Brooks, and King. King reiterated his concerns from the previous week, and continued to cite examples of unequal treatment. King also let Echols know that several Black co-workers expressed that they would participate in an investigation should they be approached by HR. Echols asked if everyone was

willing to move forward and carry out their normal work tasks, and King told Echols that he always prioritized his core job responsibilities, and of course would continue to do so moving forward.

17. Over the next several weeks, King spoke to several Black colleagues to ask if they had been approached by HR. They all said that no one from HR had reached out to them.

18. In November of 2019, King learned that an external candidate was hired to be a Senior Corporate Relations Manager, which was a position King was in line for and highly qualified to do. The external candidate was a young Black male who was far less experienced and had no direct United Way work experience.

19. King felt that this was the first sign of retaliation, since previous Senior Managers were internal candidates who did not have to apply for the position; they were simply awarded the promotions unchallenged.

20. In late November and early December, King quietly asked several Black colleagues if they had been approached by HR to discuss the treatment of Black employees, and none of them been approached by HR to investigate or discuss any of their possible concerns, which constitutes a failure to investigate the concerns and claims made by King.

21. On December 10th, 2019, United Way of Greater Atlanta terminates King and refuses to give any clear or specific reason in writing.

22. United Way of Greater Atlanta is sued by King for race discrimination and retaliation.

## CAUSES OF ACTION

**Section 1981 Violation**

23. King's claim for recovery under Section 1981 is based upon 42 U.S.C. § 1981, which provides that all persons within the United States shall have the same right to make and enforce contracts and to the full and equal benefit of all laws as is enjoyed by white citizens. This law entitles a person of color to equal opportunity and treatment in employment. Thus, when an employer acts adversely against a person of color because of that person's race, the law has been violated and the person of color may file suit and recover damages.

24. A person is also entitled to file suit and recover damages under Section 1981 for retaliation for opposing or reporting violations of Section 1981, or for participating in an investigation of a violation of Section 1981.

25. United Way of Greater Atlanta violated the federal statute by intentionally discriminating and retaliating against King; and, as a direct result of the discrimination and retaliation caused damages to King.

**Compensatory and Equitable Relief**

26. King sustained damages, including lost wages and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, for which he is entitled to recovery under her causes of action. King is also entitled to declaratory relief that a violation has occurred and to equitable relief in the form of reinstatement

or an injunction against future discrimination or retaliation.

**Exemplary Damages**

27. King is also entitled to receive punitive damages because United Way of Greater Atlanta engaged in a discriminatory or retaliatory practice or in discriminatory or retaliatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

**Attorney's Fees**

28. King is also entitled to attorneys' fees, interest, and costs of court for services rendered in this cause, including trials and appeals.

## JURY DEMAND

29. King requests a trial by jury to the extent allowed by law.

WHEREFORE, King requests that United Way of Greater Atlanta answer and that on final trial, King have judgment against United Way of Greater Atlanta for compensatory, declaratory, equitable, and exemplary damages, attorneys' and expert fees, costs of suit, and interest as provided by law, and any further relief to which he may be entitled.

**Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best

of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Respectfully submitted (*pro se*),

**Date:**        December 8, 2023

**Signature:** _____

**Name:**        Anthony A. King

Anthony A. King
P.O. Box 567236
Atlanta, Ga 31156
(404) 247-8115
anthonykinggsu@gmail.com